Argued and submitted January 30, affirmed July 11, 2001

DONALD EARNEST ALLEE,
*Appellant,*

*v.*

Mitch MORROW,
Superintendent,
Oregon State Correctional Institution,
*Respondent.*

(97C-12181; CA A107851)

28 P3d 651

Steven H. Gorham argued the cause and filed the opening brief for appellant. Donald Ernest Allee filed the supplemental brief *pro se*.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioner appeals from a judgment partially denying his claim for post-conviction relief. ORS 138.510 *et seq.* The judgment granted relief from a compensatory fine of $15,000 that had been ordered as part of petitioner's criminal sentence, but denied relief on all other claims made by petitioner. Petitioner argues that the post-conviction judge improperly refused to recuse herself and that the court erred in not setting his criminal convictions aside. We affirm.

Petitioner was convicted of two counts of sodomy, two counts of unlawful sexual penetration, two counts of using a child in a display of sexually explicit conduct, and two counts of sex abuse. On direct appeal, this court reversed the sentences imposed on those convictions and remanded for resentencing. *State v. Allee*, 143 Or App 626, 924 P2d 874 (1996). After resentencing, petitioner filed the petition for post-conviction relief that is at issue here, alleging inadequate assistance of trial counsel. The case was originally assigned to Marion County Circuit Court Judge Miller, who retired before the case was tried. Although it was common knowledge in Marion County legal circles that Judge Rhoades would assume Judge Miller's caseload, there is nothing in the record that would indicate direct notice from the court to petitioner or his attorney that his case had been reassigned to Judge Rhoades.

Petitioner's counsel first received notice from the court on January 19, 1999, that petitioner's case would be heard by Judge Rhoades when he appeared without petitioner for a hearing in Judge Rhoades' courtroom. Petitioner himself did not have actual notice about the assignment of Judge Rhoades until January 28, the date set for trial. Petitioner filed a motion to recuse Judge Rhoades and affidavit on that day, asserting that he believed he would be unable to receive a fair and impartial hearing before Judge Rhoades on the ground that a female judge, and in particular Judge Rhoades, would be gender-biased against him in a sex abuse case involving children.

The trial was set over. Judge Rhoades tendered the motion to the presiding judge of the Marion County Circuit

Court, who denied it as having been filed untimely and, also, on the merits. Petitioner then went to trial before Judge Rhoades, who denied all of his claims, except his claim relating to the compensatory fine.

On appeal, petitioner raises two assignments of error. We address the second assignment first. Petitioner contends that the presiding judge erred in refusing to recuse Judge Rhoades, and he argues that his motion was filed in a timely manner. The timeliness of a motion for a change of judge is governed by ORS 14.260 and ORS 14.270. ORS 14.260(1) authorizes any party or attorney to move for recusal based on a good faith belief that the party or attorney cannot have a fair and impartial trial before the assigned judge. ORS 14.260(2) and (3) provide time limitations:

"(2) The affidavit shall be filed with such motion at any time prior to final determination of such cause, matter or proceedings in uncontested cases, and *in contested cases before or within five days after such cause, matter or proceeding is at issue upon a question of fact or within 10 days after the assignment, appointment and qualification or election and assumption of office of another judge* to preside over such cause, matter or proceeding.

"(3)  * * * No motion to disqualify a judge or a judge pro tem, assigned by the Chief Justice of the Supreme Court to serve in a county other than the county in which the judge or judge pro tem resides shall be filed more than five days after the party or attorney appearing in the cause receives notice of the assignment." (Emphasis added.)

In addition, ORS 14.260(4) provides:

"In judicial districts having a population of 100,000 or more, the affidavit and motion for change of judge shall be made at the time and in the manner prescribed in ORS 14.270."

ORS 14.270 provides, in relevant part:

"An affidavit and motion for change of judge to hear the motions and demurrers or to try the case shall be made *at the time of the assignment of the case to a judge* for trial or for hearing upon a motion or demurrer. Oral notice of the intention to file the motion and affidavit shall be sufficient compliance with this section providing that the motion and

affidavit are filed not later than the close of the next judicial day." (Emphasis added.)

Because this case was tried in Marion County, a judicial district that has a population of more than 100,000, the provisions of ORS 14.270 are controlling.

■■    To resolve the issue of whether petitioner's motion was timely filed, we are required to interpret the "at the time of assignment" language in ORS 14.270. In interpreting a statute, we attempt to determine the legislature's intention in enacting the statute. We first examine the text and context of the statute as the best evidence of the legislature's intent in accordance with the ordinary and common meaning of its words.

■■    It is clear from a comparison of ORS 14.260 with ORS 14.270 that the legislature intended different procedures to govern motions for recusal in judicial districts of different populations. ORS 14.260(4) makes that objective express when it removes districts of 100,000 or more in population from the requirements of ORS 14.260 and subjects them to the requirement of ORS 14.270. ORS 14.260, which governs judicial districts of less than 100,000 in population, includes four time limitations. The first time limitation is that, in uncontested cases, such a motion must be filed before the final determination of the matter. The second time limitation is the five-day limitation of ORS 14.260(2), which begins to run when a contested case is at issue upon a question of fact. For example, the entering of a plea in a criminal case starts the five-day period under the statute. *State v. Hilborn*, 299 Or 608, 705 P2d 192 (1985). The third time limitation is the 10-day period in ORS 14.260(2), which begins upon the occurrence of the last of the following: the assignment of a new judge, the appointment and qualification of a new judge, or the election and assumption of office of a new judge. *See Hilborn*, 299 Or at 614. The final time limitation is the five-day period provided by ORS 14.260(3), which covers assignments of judges by the Supreme Court and which begins when "the party or attorney appearing in the cause receives notice of the assignment." Each of the time limits for situations covered by ORS 14.260 gives a litigant several days, at a minimum, to file a motion for recusal.

In contrast, ORS 14.270 contains only one time limitation—a limitation that requires parties or attorneys to move for recusal, at least orally, *"at the time of* the assignment[.]" (Emphasis added.) The ordinary meaning of the words "at the time of" indicates that such a motion must be made contemporaneously with the assignment. Because the statute does not distinguish between "a judge" and "another judge," the time limitation of ORS 14.270 covers both initial judicial assignments and also "replacement" assignments.[1] As the statute reads, a party will lose his or her right to challenge a judicial assignment unless the party makes a motion contemporaneously with a judicial assignment or reassignment.

Although the parties agree that ORS 14.270 requires a contemporaneous motion, they disagree about the event that triggers the need for the motion. That narrower question turns on what meaning to ascribe to the word "assignment." Petitioner argues that, in the Third Judicial District (Marion County), an "assignment" occurs when the act of designating a judge is memorialized by a writing that is placed in the court file. He then concludes that, because no writing was filed in this case reassigning the case from Judge Miller to Judge Rhoades, the statute's time limitations were never triggered. He candidly concedes that, if the statute is interpreted differently to include a behind-the-scenes assignment, his motion was untimely. He points out, however, that such an interpretation would mean that no litigant in a district using such an assignment procedure would ever be able to challenge an allegedly biased judge under ORS 14.270.

Respondent counters that the assignment of Judge Rhoades to this case occurred when, through the administrative authority of the presiding judge, the court determined that Judge Rhoades would assume Judge Miller's caseload,

---

[1] Petitioner also argues that ORS 14.270 should be interpreted to cover only initial assignments and that the 10-day limitation from ORS 14.260(2) should be imported into ORS 14.270 to cover "reassignments." Thus, he reasons, his motion was timely because he moved for a new judge within 10 days of becoming aware of the assignment of Judge Rhoades. For the reason stated above, and because such an interpretation would require us to disregard ORS 14.260(4)'s instruction that districts of more than 100,000 in population are to be governed by the time limit in ORS 14.270, we disagree.

an act occurring sometime in December, but not memorialized in writing. Following that line of reasoning, respondent acknowledges that petitioner would have been unable to make an oral motion "at the time of the assignment," because he was not present. Petitioner argues, however, that under the holding of *State v. Garza*, 125 Or App 385, 865 P2d 463 (1993), *rev den* 319 Or 81 (1994),[2] we can interpret the statute in such a way as to make its protections unavailable to petitioner, so long as he is afforded his constitutional right to challenge a biased judge.

The trial court appeared to have yet another interpretation of the word "assignment." The trial court advised,

"First off, we—all of us who practice law in Marion County knew that Judge Miller was retiring, and he made that announcement in September or October. And it was published in the newspaper as well as many other places that that effective date was December 31, 1998. So it was clear to the attorneys that Judge Miller would not be the one hearing the case. * * * And so at that stage, it obviously becomes the duty of counsel to become aware of who took over the case load for Judge Miller. And I took—it was announced, if you will—that I was going to be taking over Judge Miller's calendar. It was in December. I don't know what date it was in December * * * You were aware that I was going to handle Mr. Allee's case because we discussed it in advance of the day of trial because you were here on another matter. * * * And so, *even though that wasn't the time of the assignment to me, because it was after the time of assignment to me, it was the date of the notice, if you will, to you*. It is, I don't believe, critical that there be a piece of paper that indicates who the judge is, when people are notified that a case is assigned to a new judge. And so, *had you, at the time that you became aware that I was going to try the case, and I was now assigned to the case, told me at that time of your oral intention to file a motion and affidavit, then you could have filed an affidavit the next day*." (Emphasis added.)

We are not persuaded by any of the above arguments and turn to the history of ORS 14.270 to ascertain how to

---

[2] In *Garza*, the defendant argued that the trial court erred in failing to recuse itself after the judge told the defendant, "Your attitude stinks." We held that there was no indication in the record that defendant was deprived of a fair and impartial trial despite the court's remark. *Garza*, 125 Or App at 389.

resolve the doubt raised by them about the intended meaning of the statute. We begin by examining the modern history of ORS 14.260 and ORS 14.270. The "motion for a change of judge" statutes, as originally enacted in 1955, provided that, in districts of less than 100,000 population, a motion for a change of judge had to be made within 5 days of the case being at issue upon a question of fact or within 10 days of the appointment or election of another judge to preside over the matter. However, for districts of more than 100,000 population, a motion to change judges could be made at *any* time before the commencement of trial itself. The only limitation was that a party could make only two such motions. Or Laws 1955, ch 408, § 3.

In 1959, the statute was amended to add the restriction that, in districts of fewer than 100,000 people, motions could not be made after the judge who was the subject of the motion had ruled on any matter of substance in the case. Or Laws 1959, ch 667, § 2. The 1959 version contained additional language that authorized a party to move for recusal of a judge even if the judge had previously ruled on a matter of substance, if the ruling had been made by the presiding judge and the presiding judge had assigned the case to himself or herself. Under those circumstances, the motion could be made after the assignment but before any additional substantive rulings were made.

In 1969, the legislature made the changes that are the subject of this appeal. Or Laws 1969, ch 144, § 1. The remainder of the restrictions and all of the time limitations in ORS 14.260 remained. At the time, the method by which judicial assignments were made was a matter of local court discretion.[3] For instance, Multnomah County employed a "call"

---

[3] It continues to be so. ORS 1.171 so provides, and it appears that judicial assignment methods are a frequent subject of supplementary local rules. *See, e.g.,* Jackson County Circuit Court SLR 6.211 ("Attorneys and parties on all criminal cases set for jury trial shall appear at Docket Call at 8:00 a.m. on the scheduled trial date. The purpose is to determine the final status of the case and to be assigned to a trial court. All jury trials shall commence on Tuesdays, Wednesdays, or Thursdays."); Klamath County Circuit Court SLR 7.022(2) ("The civil and domestic relations cases which are assigned to individual trial Judges are randomly assigned at the point of filing. All subsequent hearings and involvement with the Court shall be with the Judge assigned to the individual case."); Malheur County Circuit Court SLR 7.021(3) ("The Parties and their counsel will be advised in trial or hearing notices as to the judge who will be assigned to the case. The

system, whereby counsel for cases that were awaiting a trial date would assemble at 9:00 a.m. each morning in a designated courtroom. Testimony, Senate Committee on the Judiciary, SB 296, February 28, 1969 (statement of Judge Charles Crookham). As each case name was called, the judge who presided over the "call" hearing would ascertain whether the case was ready for trial. If it was, it was assigned to a specific judge for trial, and trial would begin on the following day. Thus, under that system, a party would not know what judge would be assigned to the case until the day before trial. *Id.* Consequently, the Multnomah County courts had adopted local court rules requiring that a motion to change judges had to be made orally on the day of "call."

In the fall of 1968, a case arose in which the Multnomah County District Court ruled that under ORS 14.270 (1959) a motion for recusal was timely if made for the first time on the day of trial. *Id.* As a result, the Multnomah County judges asked the legislature to amend ORS 14.270 to make it conform to their local rule. The bill as introduced required an oral motion to recuse at the time of the assignment (at "call") and contained a requirement that the written motion and affidavit be filed within the next judicial day.

Judge Crookham appeared before the Senate Judiciary committee considering the proposed bill and explained that the bill was necessary to provide the court with more control over its docket. He was asked what would happen under the bill if a court clerk called an attorney at 2:30 p.m., told the attorney of the judicial assignment, and said that the case was set for 9:30 a.m. the next morning. Crookham explained that, during the phone call, the lawyer would notify the clerk that the attorney intended to file a motion for recusal and an affidavit, and the clerk would either reassign the case at that time or set it aside until the motion had been filed. *Id.* Crookham noted in his testimony that the proposed bill would also apply to the judicial districts in Lane and Marion Counties. He indicated that he had written to the presiding judges of both of those districts, asking them for comments, but that he had received no replies. *Id.*

---

parties and attorneys will be notified promptly when the case is assigned to a different judge."); Lincoln County Circuit Court SLR 7.005.

The bill passed the Senate. In a House Judiciary subcommittee meeting on March 24, 1969, Crookham again testified in support of the bill. Testimony, House Committee on the Judiciary, SB 296, March 24, 1969 (statement of Judge Charles Crookham). He explained that the bill was proposed by the judges of the Multnomah County courts and that its primary implications were for the Portland district courts. *Id.* He told the committee that, under the bill, the presiding judge would hear the motions to recuse and that, if a motion was granted, the case would be sent to another judge for trial. *Id.* The bill also passed the House and became ORS 14.270 (1969). Or Laws 1969, ch 144, § 1. Thus, ORS 14.220 was amended to require that an oral motion had to be made "at the time of the assignment of the case to a judge for trial" and that the written motion and affidavit had to be filed with the court by the end of the next judicial day.

■  From Crookham's testimony, it is clear that the legislature anticipated that counsel for the parties would be present in court when an "assignment" was made under ORS 14.270, or, at a minimum, that there would be some direct communication from the court to counsel that would formally apprise counsel of the identity of the trial judge. Consequently, we conclude that the time limitation of ORS 14.270 is triggered when counsel is apprised of an assignment by the court, either in open court or through direct communication from the court, and the statute requires a motion for recusal to be made when that communication from the court occurs.

■  Under Marion County local rules, "judges are directly assigned full responsibility for management of designated cases from assignment to ultimate conclusion, including post-judgment matters." Marion County Supplementary Local Rule 7.025. "[A]ll issues relating to assigned cases, including scheduling and procedural questions, are to be directed to the assigned Judge." *Id.* Parties to actions in Marion County usually receive notice of the assignment of their cases to a specific judge by receipt of a court-issued document, produced by a clerk and entered in the file by the court. The variances in procedure from what the legislature contemplated when it enacted ORS 14.270 do not mean that there is not a time limit for filing motions to recuse in Marion County Circuit Court. Rather, the "assignment" of a judge

under Marion County's rules is accomplished, for the purpose of the time limitation in the statute when there is a direct communication from the court to the party or counsel for the party regarding the identity of the trial judge. At that time, it is incumbent on the party to make a motion for recusal, and any subsequent motion will be deemed untimely under ORS 14.270. In this case, the assignment of this case to Judge Rhoades for purposes of ORS 14.270 occurred on January 19, when petitioner's counsel appeared in open court and was told that Judge Rhoades would preside over the trial. Petitioner was required by the statute to make an oral motion at that time, and the trial court ruled correctly that a motion made nine days later was untimely.

█    Petitioner contends that the statute requires that notice of the judicial assignment be given to him personally, rather than only to his counsel. However, notice to counsel of the date and time of a hearing constitutes notice to the represented party. *Lolley v. SAIF*, 141 Or App 281, 917 P2d 1067 (1996). Also, the Supreme Court has held that notice to counsel of an imminent dismissal is imputed to the client. *Longyear Admx. v. Edwards*, 217 Or 314, 342 P2d 762 (1959). Based on the reasoning of *Lolley* and *Longyear Admx.*, we hold that, for purposes of ORS 14.270, notice to a party's counsel of the assignment of a trial judge is notice to the party.

█    Petitioner's other assignment of error is that the trial court erred in finding that he was not denied the adequate assistance of counsel in the criminal trial and an appeal. Petitioner alleged three general categories of inadequacy of trial counsel, five acts of prosecutorial misconduct, and seven failures of appellate counsel. The trial court made extensive factual findings, by which we are bound if there is evidence in the record to support them. *Brock v. Wright*, 98 Or App 323, 326, 778 P2d 999 (1989). There is evidence in the record to support each of the court's 43 factual findings, and those findings, taken together, dispose of each of defendant's allegations.

Affirmed.